UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| LURITA ANN JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. |
| | ) 5:12-CV-187-BG |
| | ) ECF |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Lurita Ann Jackson filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g) of the denial of her applications for supplemental security income and disability insurance benefits. The undersigned has considered the parties' arguments, administrative record, and applicable law and now recommends that the district court affirm the Commissioner's decision and dismiss Jackson's Complaint with prejudice.

**I.   Standards of Review**

The standard under which the Commissioner reviews a claim for Social Security benefits involves a five-step sequential evaluation. 20 C.F.R. §§ 404.1520, 416.920 (2013). Under the sequential evaluation, an Administrative Law Judge (ALJ) decides whether the claimant: (1) is not working in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals a listing in the regulations; (4) has an impairment that prevents him from doing past relevant work; and (5) has an impairment that prevents him from doing any other work. *Id*.

The standard under which a court reviews a decision from the Commissioner is more limited. The court may only determine whether the decision is supported by substantial evidence from the

record as a whole and whether the Commissioner applied the proper legal standards. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). The Commissioner's decision must be affirmed if supported by substantial evidence. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

## II.  Statement of the Case

### A.  *Claims and Work History*

Jackson claims she became disabled at the age of thirty-two as a result of neuropathy and arthritis. (Tr. 28, 101, 109, 151.) She specifically claimed on application documents that she experiences pain in her back, is unable to walk for more than ten minutes, and must elevate her feet when sitting in order to avoid swelling and numbness. (Tr. 166, 171, 178.) She also claimed she experiences numbness and a burning sensation in her feet when standing and uses a motorized scooter when shopping. (Tr. 166, 172.)

Jackson previously worked as a merchandise deliverer, bank teller, fast food worker, and check cashier. (Tr. 46.) In addition, she has worked for nearly twenty years on a limited part-time basis servicing purified water dispensers at nine locations in Lubbock, Texas. (Tr. 31–32.) She testified that she works four hours per day on Saturdays and Sundays checking, maintaining, and cleaning the dispensers. (Tr. 32.)

### B.  *Medical Evidence*

During an examination by Piyush Mittal, M.D., four months after her alleged onset date of disability, Jackson complained of numbness and a burning sensation in her feet as well as back and knee pain. (Tr. 208–10.) Dr. Mittal reported that Jackson exhibited tenderness and decreased range of motion in her back, mild crepitis in her knees but good range of motion,

numbness and tingling in her feet, and plantar fasciitis. (Tr. 209.) He diagnosed morbid obesity, plantar fasciitis versus neuropathy, mild osteoarthritis, and hypertension. (Tr. 209–10.) Jackson also underwent an x-ray that day that showed moderate disc narrowing at L5-S1. (Tr. 211.)

Jackson filed her applications for disability insurance benefits and supplemental security income six months later on December 27, 2010. (Tr. 101, 109.) On February 22, 2011, at the initial phase of the administrative proceedings, Teresa Fox, M.D., a state agency physician, noted that Jackson suffered from plantar fasciitis and morbid obesity. (Tr. 49.) She acknowledged that Jackson complained of arthritis and neuropathy, and she noted records from examining physicians who reported that Jackson walked with a limp due to foot pain. (Tr. 223.) Based on the medical evidence before her, Dr. Fox determined that Jackson was capable of performing limited light work and was not disabled. (Tr. 222–29.) Dr. Fox inherently determined that Jackson's impairments did not meet the criteria of a listing in the regulations. *See* 20 C.F.R. §§ 404.1520(iv), 416.920(iv) (the decision-maker reaches the determination regarding the claimant's residual functional capacity after determining whether the claimant's impairments meet or equal a listing at step three).

Nearly one month later on March 10, 2011, Jackson underwent an MRI. (Tr. 234.) The MRI report indicates disc desiccation (dehydration), disc space narrowing, anterior spondylosis, and a small bulge at mid-spine. (Tr. 235.) The results also indicate desiccation, mild changes and stenosis, one disc protrusion, and indentation of a vertebral thecal sac in the lower spine. *Id*. On March 22, 2011, Jackson's counsel provided a copy of the MRI to the Social Security Administration and requested that the administration arrange an orthopedic or neurological consulting examination in order to "confirm the neurological and/or orthopedic deficits" associated with the findings from the MRI, but the request was not granted. (Tr. 175.) Thereafter, on April 12, 2011, state agency consultant John Durfor, M.D., found at the re-determination phase that Jackson

was not disabled. (Tr. 50.) Dr. Durfor considered the evidence again on May 16, 2011, and determined again that Jackson was not disabled. (Tr. 254.) Jackson requested a hearing, and an ALJ conducted a hearing on January 25, 2012. (Tr. 28, 65–66.)

    C.    *The ALJ's Decision*

Although Jackson's counsel argued at the hearing that the MRI from March 10, 2011, demonstrated that Jackson's impairments were equal in severity to Listing 1.04 (the listing in the regulations related to disorders of the spine (Tr. 29)), but the ALJ did not agree. He reviewed and considered the criteria of listing 1.04, along with the criteria for several other listings, and ultimately determined that Jackson's impairments did not meet or medically equal any listing in the regulations, including listing 1.04. (Tr. 16.) He acknowledged that Jackson suffered from severe impairments, including neuropathy in her feet, plantar fasciitis, lumbar degenerative disc disease, osteoarthritis in her knees, obesity, and depression. (Tr. 15.) He nonetheless determined that she had the residual functional capacity (RFC) to perform non-complex light work with a sit/stand option that does not involve interaction with the general public; does not involve climbing, crawling, kneeling, or squatting; and requires only occasional stooping and crouching. (Tr. 17.) Based on testimony from a vocational expert, he concluded that there were jobs in the national economy that Jackson could perform and that she was therefore not disabled. (Tr. 21–22.)

### III.   Jackson's Points of Error

In her first point of error, Jackson contends the ALJ erred at the third step of the sequential evaluation because he did not seek the opinion of a consulting physician in determining whether her impairments meet or are equivalent to the criteria in listing 1.04. In her second point of error, she contends the ALJ failed to consider the combination of her impairments.

**IV.** **Discussion**

    A.    *First Point of Error*

At step three of the sequential evaluation the Commissioner is required to compare the claimant's impairment(s) with listings contained in appendix 1 of the regulations that are considered severe enough to disable an individual. *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000). If the Commissioner determines that the claimant's impairment(s) meet the duration requirement in the Social Security Act and that they also meet or medically equal the criteria of one of the listings in appendix 1, the claimant is presumed to be disabled and qualifies for benefits without further inquiry. *Id.* at 390. The regulations direct that the ALJ will consider the opinion of one or more designated consultants in determining whether the claimant's impairments medically equal a listing. 20 C.F.R. §§ 404.1527(c), 416.927(c). "Designated consultants" include the physicians who make disability determinations at the initial and reconsideration determinations. 20 C.F.R. §§ 404.1527(d), 416.927(d)

In this case, Drs. Fox and Durfor determined at the initial and reconsideration stages that Jackson was not disabled. (Tr. 49–50, 229, 254.) There was therefore consulting physician opinion as to whether Jackson's impairments met or medically equaled a listing in the regulations. *See* 20 C.F.R. §§ 404.1526(c)–(d), 416.926(c)–(d) (in determining medical equivalence, the opinion from medical consultants designated by the Commissioner are considered, and such consultants include state agency physicians); *see also Haywood v. Sullivan*, 888 F.2d 1463, 1468 (5th Cir. 1989) (noting in a case in which the ALJ did not obtain testimony from a medical advisor that state agency physicians made step three determinations at the initial and reconsideration phases).

Jackson contends however that the Social Security Administration should have ordered that she undergo an examination by a consulting physician after she introduced the MRI into

5

evidence and argues that the state agency physicians based their opinions on incorrect diagnoses. She claims that Dr. Fox listed plantar fasciitis as the primary diagnosis and morbid obesity as the secondary diagnosis and that Dr. Durfor listed diabetes mellitus as the primary diagnosis and obesity and hyperalimentation (overeating) as secondary diagnoses.

These facts do not undermine the ALJ's decision.  First, there is evidence in the record that Jackson's problems with her feet are due, in part, to problems in the plantar aspect of her foot.  Upon examination, Dr. Mittal found that Jackson experienced numbness and tingling below her ankle but that she also exhibited a great deal of tenderness upon touch of the plantar aspect of her feet. (Tr. 209.) Another examining physician noted that Jackson exhibited sensitivity to touch in the plantar aspect of both of her feet, while another examining physician noted that Jackson complained of heel pain. (Tr. 203, 218.) Regardless of how Jackson's foot problems are described, the record demonstrates that Jackson suffers from problems with her feet, and the ALJ acknowledged the severity of her foot problems. (Tr. 15, 18.)  Second, in regard to the diagnoses of diabetes mellitus and obesity that Dr. Durfor listed on the non-disability finding, the record shows that Jackson has complained of neuropathy, which is a symptom experienced by individuals with diabetes; has a family history of diabetes; takes a medication prescribed to diabetics for pain associated with neuropathy; underwent a blood test that showed a high glucose level that would indicate diabetes; and is morbidly obese. (Tr. 204, 208, 243, 248.) Notwithstanding Dr. Durfor's notation of diabetes mellitus as an impairment, the ALJ's findings are not based on a determination that Jackson is diabetic.  Any error, therefore, must be viewed as harmless.  Error is not prejudicial and is regarded as "harmless" when it does not compromise the ALJ's ultimate conclusion. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (finding harmless error where it was

"inconceivable that the ALJ would have reached a different conclusion" in absence of the error).

Further, it is within the ALJ's discretion to order a consultative examination. *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989). A consultative examination at government expense need not be ordered unless the record shows that such an examination is necessary to enable the ALJ to make a disability determination. *Id.* (citation and internal quotations omitted). Finally, the issue at step three of the sequential evaluation is not how the claimant's impairments are characterized by physicians but whether they meet the criteria of a listing in the regulations. In this case, there was sufficient evidence in the record to enable the ALJ to make the step three determination.

At step three of the sequential evaluation, the claimant bears the burden of proving with medical evidence that his impairment(s) meet or equal each of the specified medical criteria of a listing. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). The medical evidence in this case does not support a finding that Jackson's impairments meet or medically equal listing 1.04.

Listing 1.04 is the listing for disorders of the spine. 20 C.F.R. pt. 404. subpt. P, app. 1, § 1.04. Disorders that would fall under this listing include those involving herniated discs, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, and vertebral fracture that result in compromise of a nerve root. *Id.* In addition to showing compromise of a nerve root, there must be evidence showing that the criteria under either (A), (B), or (C) is met. Under (A), there must be evidence of:

(1) Neuro-anatomic distribution of pain, limitation of motion of the spine;
(2) Motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss; and
(3) A positive straight-leg test in cases in which there is involvement in the lower back.

20 C.F.R. pt. 404. subpt. P, app. 1 § 1.04(A). There is no evidence of a herniated disc that would cause nerve root compression on the MRI report Jackson submitted to the Social Security Administration. (Tr. 234 –35.) In regard to limitation of motion of the spine, examining physicians found no limitation. (Tr. 203 (normal range of motion and alignment); Tr. 265 (full range of motion throughout the lumbrosacral spine and all extremities)). In regard to motor loss and sensory or reflex loss, a general practice physician reported "no weakness" on September 29, 2011, and on April 25, 2012, a specialist reported "5/5 strength throughout" and balance and gait within normal limits. (Tr. 258, 265.) Finally, a straight-leg test was negative. (Tr. 209.) Thus, the evidence does not demonstrate that Jackson's impairments meet or equal the criteria of listing 1.04(A).

The same is true for listings 1.04(B) and 1.04(C). In regard to listing 1.04(B), Jackson must provide evidence showing a condition of or equal to the severity of spinal arachnoiditis. 20 C.F.R. pt. 404. subpt. P, app. 1 § 1.04(B). According to the regulations, spinal arachnoiditis is characterized by adhesive thickening of the arachnoid or tissue that surrounds the spine. § 1.00(K)(2)(a). The condition is associated with chronic compression or irritation of the nerve roots or the spinal cord and may be caused by spinal stenosis, a history of spinal trauma, or meningitis. § 1.00(K)(2)(b). In this case, there is no evidence of spinal arachnoiditis or of spinal trauma or meningitis, and the MRI shows no significant stenosis in Jackson's thoracic spine and only mild stenosis at two levels in her lumbar spine. (Tr. 234–35.)

Finally, in regard to listing 1.04(C), there must be evidence of pseudoclaudication that results in chronic pain and weakness and an inability to ambulate effectively. 20 C.F.R. pt. 404. subpt. P, app. 1 § 1.04(C). According to the regulations, pseudoclaudication may result from spinal stenosis and causes pain in the lower back, buttocks, and legs. 20 C.F.R. pt. 404. subpt. P, app. 1

§ 1.00(K)(3). As noted above, the MRI shows only mild stenosis. (Tr. 234 –35.) Further, the evidence does not demonstrate an inability to ambulate effectively. An "inability to ambulate effectively" means an extreme limitation in the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete daily activities. 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(2)(b)(1). The regulations further direct that ineffective ambulation is generally defined as the inability to ambulate without assistive devices that limit the claimant's ability to use both extremities. *Id.* Examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches, or two canes and the inability to walk a block at a reasonable pace on rough or uneven surfaces. *Id.* Jackson claims she uses a motorized scooter when shopping, and a "slight limp" was noted upon examination. (Tr. 181, 209.) However, there is no evidence of an extreme limitation in Jackson's ability to walk. Dr. Mittal noted that Jackson did not use an assistive device to walk, Dr. Gage noted that she walked with a "slight limp," and a specialist noted that Jackson's gait was within normal limits; in addition, the evidence shows that Jackson was capable of "working out" at a time after she claimed her disability began, and she testified that she walked during the eight hours she worked every week. (Tr. 31, 209, 241, 250, 265.) The regulations direct that the determination as to whether a claimant can ambulate effectively is "based on the medical and other evidence in the case record." 20 C.F.R. pt. 404, subpt. P, app. 1 § 1.00(2)(a). Based on the medical evidence and Jackson's testimony, Jackson is able to ambulate effectively.

    B.    *Second Point of Error*

In her second point of error Jackson argues the ALJ failed to consider the combination of her impairments and specifically claims he failed to evaluate the symptoms of neuropathy in her lower extremities, pain in her back, and her obesity.

9

The ALJ must consider all the claimant's impairments –whether severe or non-severe – in combination throughout the disability process in order to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1523, 416.923.  In addition, Ruling 02-01p directs that the ALJ must consider the combined effect of the claimant's obesity with the claimant's other impairments at all stages of the sequential disability evaluation.  *See* SSR 02-01p, 2000 WL 628049, at *3 (Sept. 12, 2002).  Remand, however, is not required on this point because the ALJ considered the combined effect of Jackson's impairments, including her obesity at the second, third, and fifth steps of the sequential evaluation.  *See Hajek v. Shalala*, 30 F.3d 89 (8th Cir. 1994) (rejecting the plaintiff's "conclusory statement" that the ALJ failed to consider the combined effects of impairments because the ALJ acknowledged the claimant's multiple impairments at the second, third, and fifth steps of the sequential evaluation).

The ALJ's determination that Jackson's impairments did not render her disabled is supported by substantial evidence.  Although the medical evidence shows that Jackson experiences some limitations as a result of her impairments, the evidence also shows that she is capable of performing limited light work as the ALJ found.  Jackson testified that she lost weight in part as a result of exercising in a chair while watching an exercise coach on television, and her weight loss improved her symptoms.  (Tr. 15, 224, 242.)  She attends church on Sundays, grocery shops, prepares simple meals, takes care of her personal needs, and works on a limited part-time basis. (Tr. 31, 182, 188.)  Finally, the most recent examination record includes findings inconsistent with disability. Roger J. Wolcott, M.D., reported "very mild mixed motor and sensory neuropathy," full range of motion throughout Jackson's spine and extremities, 5/5 strength throughout all extremities with normal bulk and tone, symmetric girth measurements, normal reflexes, and of balance and gait

10

within normal limits. (Tr. 265.)

"Substantial evidence is more than a scintilla, less than a preponderance, and is such that a reasonable mind might accept it as adequate to support a conclusion." *Randall v. Astrue*, 570 F.3d 651, 662 (5th Cir. 2009) (quoting *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the ALJ's decision. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988). Substantial evidence supports the ALJ's determination in this case.

## V.     Recommendation

The Commissioner's decision of no disability must be affirmed if supported by substantial evidence. *Masterson*, 309 F.3d at 272. Substantial evidence supports the ALJ's decision in this case. It is therefore recommended that the United States District Court **AFFIRM** the Commissioner's decision and **DISMISS** Jackson's Complaint.

## VI.    Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2013); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are

accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: July 29, 2013.

_____
NANCY M. KOENIG
United States Magistrate Judge